CENTER FOR DISABILITY ACCESS
Raymond G. Ballister, Jr., SBN 111282
Mark Potter, Esq., SBN 166317
Mail: PO Box 262490
    San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
    San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com
    Attorneys for Plaintiff

1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Gilbert Salinas**,<br><br>         Plaintiff,<br><br>    v.<br><br>**CBC Restaurant Corp.,** a Delaware Corporation; and Does 1-10,<br><br>         Defendants. | **Case No.** SACV-14-01233 CJC (ANx)<br><br>**Plaintiff's Notice of and Motion for Summary Judgment**<br><br>Date:     August 3, 2015<br>Time:     1:30 p.m.<br>Dept:     9B<br><br>**Hon. Judge Cormac J. Carney** |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES.........................................................ii

I.   PRELIMINARY STATEMENT ...........................................1

II.  RELEVANT FACTS .............................................................1

III. LEGAL STANDARD............................................................2

IV.  THE LACK OF AN ACCESSIBLE TRANSACTION
     COUNTER VIOLATES THE ADA ..................................3

     A.  Plaintiff is Disabled .................................................5

     B.  Defendants Own, Operate, Lease or Lease to a Place of
         Public Accommodation.............................................5

     C.  The Bakery is Not Readily Accessible to and Useable by
         Persons with Disabilities ..........................................5

     D.  The Plaintiff Encountered This Violation and Is Being
         Deterred From Patronage ..................................... 10

V.   THE LACK OF AN ACCESSIBLE TRANSACTION
     COUNTER IS UNLAWFUL UNDER CALIFORNIA LAW........ 11

VI.  REMEDIES .................................................................... 12

VII. CONCLUSION ............................................................ 13

Points and Authorities: MSJ                    SACV-14-01233 CJC (ANx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Cases

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*
    603 F.3d 666 (9th Cir. 2010) .................................................................4

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ...........................................................................2

*Chapman v. Pier 1 Imports (U.S.) Inc.*
    631 F.3d 939 (9th Cir. 2011) ...................................................... 3, 5, 6

*Cullen v. Netflix, Inc.,*
    880 F.Supp.2d 1017 (N.D. Cal. 2012) ................................................ 11

*D'Lil v. Best Western Encina Lodge & Suites,*
    538 F.3d 1031 (9th Cir. 2008) ........................................................... 11

*Doran v. 7-Eleven, Inc.,*
    524 F.3d 1034 (9th Cir. 2008) ........................................................... 11

*Moeller v. Taco Bell Corp.*
    816 F.Supp.2d 831 (N.D. Cal. 2011) ...................................................4

*Molski v. M.J. Cable, Inc.,*
    481 F.3d 724 (9th Cir. 2007) ....................................................... 11, 12

## Statutes

1991 Standards § 7.2(1) ..............................................................................9

2010 Standards § 904.4 ........................................................................... 10

2010 Standards § 904.4.1 ......................................................................... 10

42 U.S.C. § 12102(2)(A) ..............................................................................5

42 U.S.C. § 12181(7)(B) ..............................................................................5

42 U.S.C. § 12183(a)(1) ...............................................................................5

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

42 U.S.C. § 12188(a) ........................................................................ 4

42 U.S.C. §§ 12183(a)(2) .................................................................. 4

Cal. Civ. Code § 52(a) ...................................................................... 12

Cal. Civ. Code § 55.56(a) ................................................................. 12

Cal. Civ. Code § 55.56(b) ................................................................. 12

Civ. Code § 51 (f) ............................................................................. 11

iii

# I.  PRELIMINARY STATEMENT

This is a single issue case. Mr. Salinas, a wheelchair user, lives less than four miles from the defendant's newly built bakery and restaurant and is frustrated by the fact that the defendant fails to provide an accessible transaction counter. This is illegal and discriminatory under the ADA and has been for more than 25 years. Mr. Salinas seeks the fix and a statutory damages of $8,000. There is no defense in this case.

# II.  RELEVANT FACTS

Gilbert Salinas is a paraplegic who cannot walk and who uses a wheelchair for mobility. SUF, #1. Gilbert Salinas cannot raise his arms above the height of his heart without pain and difficulty. SUF, #2. Salinas lives in Long Beach, just 3.6 miles from the Corner Bakery located at 6507 Pacific Coast Highway, Long Beach, California. SUF, #3. Defendant CBC owns and operates the Corner Bakery which was built in 2011-2012. SUF, #15-16. The Corner Bakery is located just two buildings down from the United Artist Long Beach 6 movie theater that the plaintiff goes to with his wife on a regular and ongoing basis. SUF, #4. On April 14, 2013, Salinas and his wife went to the Corner Bakery during their date night to buy food. SUF, #5.

There are two transaction or sales/service counter areas at the Corner Bakery which are separated from each other by a glass windowed case displaying baked goods. SUF, #6. Every transaction between employee and customer at these counters necessarily takes place over a 46 inch counter. SUF, #7. While there is a 34 inch shelf on the customer side of the transaction counter, the employees at the Corner Bakery cannot even see that 34 inch high convenience counter from the employee side of the counter. SUF, #8.

1

1       On April 14, 2013, when the plaintiff approached the counter at
2   the Corner Bakery, he could barely see the female employee behind the
3   counter and the height of the counter was such that if he tried to handle a
4   transaction over the counter, he would have suffered pain and difficulty.
5   SUF, #9. So, instead, the plaintiff had his wife handle the transaction.
6   SUF, #10. The experience was frustrating and somewhat embarrassing
7   for Mr. Salinas. SUF, #11.
8       The Corner Bakery is located at the Marketplace in Long Beach
9   which is a concentration of dining and shopping businesses that the
10  plaintiff and his wife frequent. SUF, #12. In August of 2014 and January
11  of 2015, the plaintiff and his wife were at or near the Corner Bakery and
12  wanted to eat the Corner Bakery and would have eaten there but for the
13  fact that the transaction counters are too low. SUF, #13. The plaintiff
14  liked the food he bought at the Corner Bakery and plans on returning and
15  patronizing the Corner Bakery once the bakery installs a lowered
16  transaction counter. SUF, #14.

17

18  ### III.  LEGAL STANDARD

19      Pursuant to section 56 of the Federal Rules of Civil Procedure, a
20  party can bring a motion for summary judgment where there is no
21  genuine dispute as to any material fact. Motions for summary judgment
22  are not "disfavored." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
23  In the present case, there can be no genuine dispute over the facts of the
24  case and those facts inform the court and the parties that it would be a
25  waste of judicial resources for this case to proceed to trial. There is no
26  genuine issue of material fact and this court should grant the plaintiff's
27  motion. The plaintiff stipulates to dismiss his Disabled Person and
28

Points and Authorities: MSJ                                    SACV-14-01233 CJC (ANx)

Negligence causes of action (third and fourth causes of action) to ensure that this motion disposes of the entire case.

## IV.   THE LACK OF AN ACCESSIBLE TRANSACTION COUNTER VIOLATES THE ADA

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "discrimination" can be misleading. The ADA applies not just to intentional discrimination but to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations

3

by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman*, 631 F.3d at 945. This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers...in existing facilities...where such removal is readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);
2. The defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;
3. The defendants must be responsible parties, i.e., owners, operators, lessors or lessees. *Id.*;
4. The defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove. 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);
5. Plaintiff must have actually encountered this non-removed and unlawful barrier. 42 U.S.C. § 12188(a).

As discussed below, Plaintiff's civil rights were violated because the defendant failed to design and construct its bakery/restaurant to provide

Points and Authorities: MSJ                                SACV-14-01233 CJC (ANx)

1   an accessible transaction counter. Plaintiff will discuss each element,
2   seriatim.
3
4   ## A.        Plaintiff is Disabled
5        The plaintiff is a man with severe mobility impairments who
6   cannot walk and uses a wheelchair for mobility. (SUF #1). There can be
7   little doubt that he fits the qualification under the Americans with
8   Disabilities Act as a person with a disability. 42 U.S.C. § 12102(2)(A)
9   (defining a physical impairment substantially affecting a major life
10  activity as qualifying as a disability).  Given plaintiff's inability to walk,
11  this is not a genuine issue.
12
13  ## B.        Defendants Own, Operate, Lease or Lease to a Place of Public Accommodation
14       Bakeries and restaurants are expressly identified under the ADA as
15  places of public accommodation. 42 U.S.C. § 12181(7)(B)&(E) . The
16  Defendant owns and operates this place of public accommodation. (SUF
17  #15). The defendant, therefore, have has obligation to comply with the
18  anti-discrimination provisions of Title III of the Americans with
19  Disabilities Act.
20
21  ## C.        The Bakery is Not Readily Accessible to and Useable by Persons with Disabilities
22       The ADA defines "discrimination" as a failure to design and
23  construct facilities (after 1993) that are readily accessible to and usable
24  by individuals with disabilities. 42 U.S.C. § 12183(a)(1). Here, the Corner
25  Bakery was built sometime between 2011 and 2012 and, therefore, was
26  required to have been designed and built to be accessible. (SUF #16).
27       Whether a facility is "readily accessible" is defined by the ADA
28  Access Standards. *Chapman*, 631 F.3d at 945. The Access Standards

provide "the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Id*. "The ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Id*. at 945-46.

Previously, this Court denied the defense motion for summary judgment and rejected the defense argument that its transaction counter design complied with the law. See Court Order (ECF Entry 43). In fact, this Court ordered the plaintiff to file his own motion for summary judgment. *Id*. Thus, the following submission and argument is merely a repeat of the briefing already assessed by the Court.

Plaintiff's expert and a California Certified Access Specialist, Paul Bishop, conducted an inspection of the transaction counters at the Corner Bakery. Exhibit 2 (Bishop Dec), ¶ 6. He inspected all sides and angles of the transaction counters, took measurements with a measuring tape, took photographs and mimicked the steps necessary to conduct a transaction during his site inspection. *Id*. He found that there are two transaction or sales/service counter areas at the Corner Bakery and they are separated from each other by a glass windowed case displaying baked goods. *Id*. at ¶ 10. Those two transaction areas are depicted in photos A and B attached to the declaration of Paul Bishop. As can be seen in those photographs and as found by Mr. Bishop, every transaction between employee and customer at these counters necessarily takes place over a 46 inch high counter. *Id*. at ¶ 12. There is no lowered section of counter that permits an exchange between employee and customer at a 36 inch height. *Id*.

While there is a 34 inch ledge or counter that is found on the customer side of the counter, Mr. Bishop declares that is not "the"

Points and Authorities: MSJ                    SACV-14-01233 CJC (ANx)

transaction counter. *Id.* at ¶ 14. It is a separate counter that provides convenience for customers, i.e., a place to place a purse, write a check, and place bags but everything that is handed back and forth between customer and employee as part of the sales transaction necessarily takes place over the 46 inch counter. *Id.*



Mr. Bishop found that the employees at the Corner Bakery cannot even see that 34 inch high convenience counter from the employee side of the counter. Exhibit 2 (Bishop Dec), ¶ 15. Mr. Bishop is over six feet tall and he could not even see the convenience counter from the employee side of the counter. *Id.* Mr. Bishop further found that the Corner Bakery places obstructions such as cups, computer screens, coffee makers, the cash registers in between the employee and customer that is higher than

Points and Authorities: MSJ                                    SACV-14-01233 CJC (ANx)

1    the 46 inch counter between customer and employee, creating yet further

2    impediments. *Id*. at ¶ 16.



*(From the employee side, one can barely see the high counter, much less the*
*lower counter on the customer side)*

21         Mr. Bishop notes that if he were handling a transaction with a

22   customer, he could push the cups and objects out of the way and reach

23   over the 46 inch counter to grope around for something on the

24   customer's convenience counter, sight unseen but that this was awkward

25   and persons shorter than him would find even reaching that counter

26   difficult if not impossible. Exhibit 2 (Bishop Dec), ¶ 17.

27         The applicable section of the 1991 Standards for "Sales and

28   Service Counters" reads as follows:

(1) In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 in (915mm) in length with a **maximum height of 36 in (915 mm) above the finish floor**. It shall be on an accessible route complying with 4.3. Such counters shall include, but are not limited to, counters in retail stores, and distribution centers. The accessible counters must be dispersed throughout the building or facility. In alterations where it is technically infeasible to provide an accessible counter, an auxiliary counter meeting these requirements may be provided.

1991 Standards § 7.2(1) (emphasis added). Whether one calls the lower ledge on the customer side an auxiliary counter, a convenience counter or a check writing surface, it does not represent the height of *the* transaction counter because all transactions must necessarily take place over the higher, 46 inch counter. There is no section of transaction counter that has a *maximum* height of 36 inches in compliance with the 1991 Standards. Every section of counter has a maximum height of 46 inches.[1]

Additionally, even if the defendant had applied the 2010 Standards, the transaction counter would still not comply. Because the approach to these counters are a parallel approach, i.e., not providing knee or toe space, the applicable sections of the 2010 Standards for "Sales and Service Counters" is section 904.4 and 904.4.1 and those sections read as follows:

**904.4 Sales and Service Counters**. Sales counters and service counters shall comply with 904.4.1 or 904.4.2. The

---

[1] The 1991 Standards do permit "auxiliary" counters "in close proximity" to the main counter to be used as an alternative in some circumstances but those circumstances are not present here. Under the section that is applicable to sales counters where cash registers are located an auxiliary counter is only permitted in alterations, not new construction. See 1991 Standards § 7.2(1). Even then it is only permitted when it is technically infeasible to provide an accessible main counter. *Id.*

Points and Authorities: MSJ                          SACV-14-01233 CJC (ANx)

1
2
3
4
5

accessible portion of the counter top shall extend the same depth as the sales or service counter top.

**904.4.1 Parallel Approach**. A portion of the counter surface that is 36 inches (915 mm) long minimum and **36 inches (915 mm) high maximum above the finish floor** shall be provided. A clear floor or ground space complying with 305 shall be positioned for a parallel approach adjacent to the 36 inch (915 mm) minimum length of counter.

6
7
8
9
10

2010 Standards § 904.4.1 (emphasis added). For the same reasons that the transaction counters fail to comply with the 1991 Standards, they fail to comply with the 2010 Standards. There is no section of counter that has a maximum height of 36 inches . . . every portion of the transaction counters requires handling transactions over the 46 inch counter top.

11
12
13
14
15
16
17
18
19
20
21
22

Additionally, however, the 2010 Standards clarify that the accessible portion must "extend the same depth as the sales or service counter top." 2010 Standards § 904.4. Here, as seen from the photos and as found by Paul Bishop, "to the extent that the Corner Bakery identifies the customer convenience counter as the 'accessible' portion of counter, it fails to 'extend the same depth' as the higher counter top where all the transactions actually take place." Exhibit 2 (Bishop Dec), ¶ 20. In sum, if that lowered ledge on the customer side of things was genuinely intended to be the "accessible" transaction counter, it is an ill-conceived and foolish design. It does not comply with either the 1991 or 2010 Standards and presents difficulties for both employees and disabled customers trying to consummate transactions.

23
24

**D.    The Plaintiff Encountered This Violation and Is Being Deterred From Patronage**

25
26
27
28

Not only did the plaintiff personally encounter this violation, but continues to be aggrieved by its existence. He wants to patronize the Corner Bakery but cannot do so without facing barriers until an accessible transaction counter is provided. He has standing to seek the installation

10

of the accessible transaction counter. "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008). "We have found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).

In sum, there has been a violation of the American with Disabilities Act.

## V.   THE LACK OF AN ACCESSIBLE TRANSACTION COUNTER IS UNLAWFUL UNDER CALIFORNIA LAW

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f).  "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731. As discussed above under section "IV", the defendant violated the ADA. Thus, there has been a per-se violation of Unruh.

Points and Authorities: MSJ                    SACV-14-01233 CJC (ANx)

## VI.  REMEDIES

The plaintiff seeks both injunctive relief and statutory damages. Under the ADA, the plaintiff is entitled to injunctive relief. 42 U.S.C. § 12188(a). Such injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2).

Statutory damages can be recovered for a violation of the Unruh Civil Rights Act "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. § 55.56(a). A denial of full and equal access takes place where a plaintiff "personally encountered" the violation and it resulted in "difficulty, discomfort or embarrassment." Cal. Civ. § 55.56(b). Additionally, a denial of full and equal access takes place where a plaintiff "demonstrates that he or she was deterred from accessing a place of public accommodation on a particular occasion." Cal. Civ. § 55.56(c). A plaintiff can recover the statutory penalty for "each particular occasion that the plaintiff was denied full and equal access . . .." Cal. Civ. §55.56(e). In the present case, all of the elements are met for the plaintiff to recover a statutory penalty for an encounter and for the deterrence incidents.

The lack of an accessible transaction counter failed to meet the access standards. The plaintiff personally encountered the access standards violation and it created difficulty and embarrassment for him. There are no genuine issues in dispute here and the plaintiff is entitled to the statutory award of $8,000 under the Unruh Civil Rights Act. See Cal. Civ. § 52(a). "The litigant need not prove she suffered actual damages to recover the independent statutory damages." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

1

## VII.  CONCLUSION

2      The plaintiff respectfully requests this Court grant his motion.

3

4  Dated: June 29, 2015          CENTER FOR DISABILITY ACCESS

5                                           /s/ Mark Potter

6                                By:_____

7                                           Mark Potter, Esq.

8                                           Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

13