CENTER FOR DISABILITY ACCESS
Raymond G. Ballister, Jr., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq. SBN 171771
<u>Mail</u>: PO Box 262490
   San Diego, CA 92196-2490
<u>Delivery</u>: 9845 Erma Road, Suite 300
   San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com
   Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Gilbert Salinas**, <br><br> Plaintiff, <br><br> v. <br><br> **CBC Restaurant Corp.,** a Delaware Corporation, <br><br> Defendants. | **Case:** 8:14-cv-1233-CJC-AN <br><br> **Plaintiff's Reply Brief in Support of His Motion for Summary Judgment** <br><br> Date: August 3, 2015 <br> Time: 1:30 p.m. <br> Ctrm: 9B <br><br> Hon. Judge Cormac J. Carney |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

   I.   PRELIMINARY STATEMENT ......................................................... 1

   II.  IT IS NO DEFENSE TO AN ADA/UNRUH CLAIM THAT THE PLAINTIFF HAD THE CAPACITY TO OVERCOME AN ACCESS VIOLATION ................................................................. 1

   III. THE DEFENDANT'S ARGUMENT ABOUT MITIGATION OF DAMAGES LACKS MERIT ...................................................... 6

      A.  Prosecuting a Lawsuit ................................................................. 6

      B.  Having Someone Else Can Handle the Transaction is Neither Required Nor a Defense ............................................. 7

   IV. THE PLAINTIFF'S DECLARATION IS NOT DEFICIENT .......... 11

   V.  CONCLUSION ................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Arroyo v. 9305 Firestone, LLC*,
  2011 WL 6177277 (C.D. Cal. 2011) ................................................................. 5

*Baughman v. Walt Disney World Co.*,
  685 F.3d 1131 (9th Cir. 2012) ........................................................................... 4

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) ...................................................................... 4, 5, 6

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
  870 F.Supp.2d 995 (E.D. Cal. 2012) ................................................................. 5

*Doran v. 7-Eleven, Inc.*,
  524 F.3d 1034 (9th Cir. 2008) ........................................................................... 4

*Kohler v. Flava Enterprises, Inc.*,
  779 F.3d 1016 (9th Cir. 2015) ........................................................................... 5

*Koire v. Metro Car Wash*,
  40 Cal.3d 24 (1985) ........................................................................................... 8

*LaFleur v. S & A Family, LLC*,
  2014 WL 2212018 (C.D. Cal. 2014) ................................................................. 8

*Langer v. McHale*,
  2014 WL 5422973 (S.D. Cal. 2014) .................................................................. 6

*McCune v. 628 Harvard Cameron, LLC*,
  2012 WL 5988880 (E.D. Cal. 2012) .................................................................. 8

*Moore v. Dollar Tree Stores Inc.*,
  --- F.Supp.3d ---, 2015 WL 65661 (E.D. Cal. 2015) ......................................... 9

*Rodriguez v. Barrita, Inc.*,
  10 F. Supp. 3d 1062 (N.D. Cal. 2014) ............................................................... 9

*Wilson v. Haria & Gogri Corp.*,
  479 F. Supp. 2d 1127 (E.D. Cal. 2007) ............................................................. 4

1    *Yates v. Sweet Potato Enterprise, Inc.*,
2        2014 WL 5588555 (N.D.Cal. 2014) ........................................................8

**Statutes**

Cal. Civ. Code § 1633.1............................................................................ 11
Cal. Civ. Code § 1633.11 .......................................................................... 11
Cal. Civ. Code § 1633.7............................................................................ 11
Cal. Civ. Code § 55.56................................................................................8
Cal. Civ. Code § 55.56(a)...........................................................................9
Cal. Civ. Code § 55.56(c)...........................................................................9
Cal. Civ. Code § 55.56(d) ..........................................................................9
Cal. Civ. Code §§ 1633.7(a) ..................................................................... 11
Cal. Civ. Code 55.56(c)............................................................................ 10

## I. PRELIMINARY STATEMENT

In opposition to plaintiff's motion for summary judgment, the defense provides a single cursory paragraph addressing whether its transaction counter complies with the law. See Defense Brief, p. 6, line 16. This is not terribly surprising given that the issue was fully and extensively briefed in connection with the defendant's own summary judgment motion. There, the Court rejected the defense arguments, denied the defense motion, and ordered the plaintiff to file his own motion. *See* ECF Entry 43. Thus, the defense now focuses on three arguments to oppose plaintiff's motion: (1) that the plaintiff could have overcome the violation; (2) that the plaintiff should have mitigated his damages; and (3) that the plaintiff's declaration is deficient because he used DocuSign as the method for applying his signature to paper. As discussed below, these arguments lack legal merit. The plaintiff respectfully requests this Court consider the arguments and grant the plaintiff's motion.

## II. IT IS NO DEFENSE TO AN ADA/UNRUH CLAIM THAT THE PLAINTIFF HAD THE CAPACITY TO OVERCOME AN ACCESS VIOLATION

A problem that permeates the defense brief is its misunderstanding of the law. The defense interpretation of the law relies upon a subjective analysis of whether a plaintiff can overcome a violation of the Access Standards. Under the defense theory, only violations that actually *deny* access are actionable and if a plaintiff can reasonably deal with or overcome a violation, then the *no harm, no foul* rule applies. Under the defense theory of the law, a plaintiff who encounters a non-compliant architectural feature must take the additional step of trying to use that

1

Plaintiff's Reply Brief: MSJ                                    8:14-cv-1233-CJC-AN

1  feature to determine whether he can successfully overcome the obstacle
2  before the violation is actionable. But this argument requires the court to
3  ignore a significant body of established and binding precedent in favor of
4  defense counsel's personal interpretation, perhaps desire, about how the
5  law should read.
6      It has been demonstrated that every transaction between employee
7  and customer at the defendant's counters necessarily takes place over a
8  46 inch high counter. While there is a 34 inch ledge or counter that is
9  found on the customer side of the counter, everything that is handed back
10 and forth between customer and employee as part of the sales transaction
11 necessarily takes place over the 46 inch counter.



The defense does not dispute this fact. Instead, the defense argues that even if this is a violation, that between the plaintiff's own abilities and defendant's employee's willingness to accommodate, the plaintiff can overcome this violation. The defense submits declarations from its employees that say, "While it is true that most customers who are standing prefer to use the upper portion of the counter, if someone in a wheelchair (or for any other reason) preferred to use the lower portion of the counter, that could be easily accommodated and has been on many occasions." Dec of Parker (ECF Entry 55-1), p. 2, lines 8-12.[1]

The defense brief argues that plaintiff's claims are deficient because he cannot prove "that the conditions were so inaccessible as to have denied him access" and that a plaintiff must establish that a violation must be "deemed to have *denied* (rather than merely limiting) full and equal access" in order to recovery the penalty under California law. Defense Brief, p. 9, line 27 – p. 10, line 14 (emphasis and parenthetical in original). The defense argues for a standard of "actual denial" (p. 10, line 21) and cites to cases that predate the ADA and amended Unruh Act. See Defense Brief, p. 11, lines 8-13.

The defense is wrong. A plaintiff does not have to have been "denied access," i.e. blocked from entry, to state a claim. Both the ADA and the Unruh Act (which incorporates the ADA) concern themselves with quality of access as well actual access. "The ADA guarantees the

---

[1] The defense submits the declarations and photographs of two six foot or more employees who can reach over the high portion of the transaction counter to touch the lowered portion either with their fingers or with an extended pen. The defense also submits photographs that demonstrate that if an employee lean out over the top of the cash register, they can see a small portion (but not all) of the lower counter section. It is somewhat humorous that the defense does not even attempt to have the five foot tall female employee who *actually* handled the plaintiff's transaction in question demonstrate her ability to "accommodate" the plaintiff.

disabled more than mere access to public facilities; it guarantees them 'full and equal enjoyment.'" *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012). The ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 at fn. 4 (9th Cir. 2008). Thus, an argument that a certain violation did not block access or was *de minimis* "misapprehends the law. Ultimate access is not a defense under the ADA." *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1134 (E.D. Cal. 2007).

The Ninth Circuit has held that the phrase "full and equal" is a term of art, having specific reference to the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"). *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011). The *Chapman* court held that "the ADAAG establishes the technical standards required for 'full and equal enjoyment'" and that "if a barrier violating these standards relates to a plaintiff's disability, it **will** impair the plaintiff's full and equal access" and "constitutes 'discrimination' under the ADA." *Id.* (emphasis added). The *Chapman* court, sitting *en banc*, held that this was an objective test looking to the ADAAG and not a subjective one that relied upon the plaintiff's actual experience:

> A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. 42 U.S.C. § 12182(b)(1)(A)(i). Indeed, by "establish[ing] a national standard for minimum levels of accessibility in all new facilities," *Indep. Living Res.*, 982 F.Supp. at 714, the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free from suit by a person who has a particular disability related to that requirement.

*Id.* at fn. 5. And this has been the consistent ruling in the Ninth Circuit:

> Title III of the ADA requires public accommodations to provide equal access to disabled patrons. 42 U.S.C. § 12182(a). To clarify what constitutes "equal access" in specific circumstances, the Department of Justice has promulgated the Accessibility Guidelines ("ADAAG") that specify precise structural requirements.

*Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1018 (9th Cir. 2015).

Moreover, the argument that the defense employees would have been happy to "accommodate" the plaintiff is unavailable:

> Among the ADA's purposes however, is to *eliminate* the stereotype of the helpless disabled person completely reliant on the assistance of able-bodied persons to come to their rescue, not to reinforce it. The disabled community fought for, and earned, the right to have stores remove barriers so that disabled customers could use those facilities independently. This court will not reduce Chapman to the need to beg for assistance or to rely upon the hoped-for existence of a kindly store clerk who happens to be in a mood to be helpful. Defendant's obligation is to ensure that the accessibility counter and the aisles are clear. When it fails to do so, it is in violation of the ADA. It may not rely upon assertions that its store clerks are kind and helpful and would eventually clear the barriers that should not be there in the first place

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 870 F.Supp.2d 995, 1007 (E.D. Cal. 2012); see also *Arroyo v. 9305 Firestone, LLC*, 2011 WL 6177277, *2 (C.D. Cal. 2011) (where defendant submitted photographs of signs announcing that disabled persons may request assistance to demonstrate that any non-compliance was not actionable because it did not actually deny access and the Court rejected the argument, holding: ""Defendant appears to suggest that Plaintiff has not shown discrimination under the ADA because he could have requested assistance. Defendant is mistaken.")

A business simply does not have the luxury of claiming that the physical facilities were *good enough* or that a plaintiff could have figured out how to get access. "We have held that obedience to the spirit of the ADA does not excuse noncompliance with the ADAAG's requirements. The ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Chapman*, *supra*, 631 F.3d at 946 [internal citations omitted].) "Plaintiff is not required to show that he was completely denied access in order to establish an ADA (and therefore Unruh Act) violation." *Langer v. McHale*, 2014 WL 5422973, at *4 (S.D. Cal. 2014).

### III. THE DEFENDANT'S ARGUMENT ABOUT MITIGATION OF DAMAGES LACKS MERIT

The defense argues that the plaintiff failed to mitigate his damages. Given that the plaintiff is not seeking any actual damages and is only seeking a single statutory penalty for his encounter and a single statutory penalty for deterrence thereafter, it seems an odd argument. Nonetheless, the defense identifies two ways that the plaintiff either mitigated or failed to mitigate his damages. Plaintiff will discuss each.

#### A. Prosecuting a Lawsuit

The defense explains that the plaintiff could have mitigated his damages by filing his lawsuit quicker and getting a federal judge to order the defendant to comply. *See* Defense Brief, p. 8, line 14 – p. 9, line 6. Thus, the defense seems to argue, the plaintiff could have promptly forced a compliant transaction counter after that first encounter and the plaintiff's desired future visits would have been without incident. Aside

from the lack of legal merit in the argument, i.e., that a plaintiff's duty to mitigate damages requires the full prosecution of a federal lawsuit, the actual facts belie the defense claim. This lawsuit was filed a year ago. The defense has not fixed the transaction counter. In fact, the defense argues that this Court cannot grant summary judgment on the issue and *cannot* order the defendant to provide a different transaction counter. Presumably, the defendant would even appeal any such order. One wonders how defense counsel can keep the proverbial straight face when his argument -- that a lawsuit would have rapidly resolved any issue with the counter -- is presented in the very lawsuit where his client is vociferously fighting any such order and has been for a year.

### B. Having Someone Else Can Handle the Transaction is Neither Required Nor a Defense

The defense argues that plaintiff "simply can't be compensated for damages which could have been avoided through reasonable measures" (Defense Brief, p. 13, lines 8-9) because he, "made no effort to mitigate damages, such as by handing his card to the cashier, setting it on either of the counters, etc." Defense Brief, p. 13, lines 5-7. The defense argues, alternatively, the plaintiff did in fact mitigate his damages "by asking his wife to complete the transaction . . .." Defense Brief, p. 13, lines 10-11.

These arguments demonstrates the lack of merit in the defense brief. There is no question that a plaintiff must take reasonable steps to mitigate damages suffered. But this applies to *actual* damages, not a penalty assessment. For example, the plaintiff testified that upon seeing the high counter, he immediately understood that he would not be able to use the transaction counter without difficulty. If, despite this awareness, he had, nonetheless, tried to use the transaction counter and thereby hurt

himself by reaching up to the higher counter, there might be a very argument that he had a duty to mitigate his damages.

But the plaintiff did not hurt himself. He is not seeking actual damages. He did not fail to engage in proper mitigation. The plaintiff seeks the statutory penalty. The California Supreme Court has explained that the statutory damages are a penalty and unconnected to "actual" damages:

> Section 51 provides that all patrons are entitled to equal treatment. Section 52 provides for minimum statutory damages of $250 [previous minimum] for every violation of section 51, **regardless of the plaintiff's actual damages**. As this court noted in Orloff v. Los Angeles Turf Club, supra, 30 Cal.2d at page 115, 180 P.2d 321, construing an earlier version of the statute, the statute provides for damages **aside from any actual damages incurred by the plaintiff**.

*Koire v. Metro Car Wash*, 40 Cal.3d 24, 33-34 (1985) (emphasis added). Additionally, all of the cases following the enactment of 55.56 continue to follow this line of authority. "Proof of actual damage is not required to recover statutory minimum damages." *Yates v. Sweet Potato Enterprise, Inc.*, 2014 WL 5588555, *12 (N.D.Cal. 2014). "Under the Unruh Act, Plaintiff can recover the independent statutory damages of $4,000 irrespective of the actual damages he sustained." *McCune v. 628 Harvard Cameron, LLC*, 2012 WL 5988880, at *4 (E.D. Cal. 2012). "The Unruh Act provides for minimum statutory damages in the amount of $4,000, which can be awarded without proof of actual damages." *LaFleur v. S & A Family, LLC*, 2014 WL 2212018, at *8 (C.D. Cal. 2014).

The language added by section 55.56 of the Civil Code did not convert the statutory penalty to something different. The new language is *standing* language. The section is titled, "*Grounds* for an award of statutory damages." Cal. Civ. Code § 55.56 (emphasis added). That

section says that only persons who are denied "full and equal access" can seek the statutory damages. Cal. Civ. Code § 55.56(a). That is, of course, the same language for standing to seek an *injunction* under the ADA and is not "damages" language. The Civil Code identifies a denial of full and equal access as those violations that cause difficulty, discomfort or embarrassment. Cal. Civ. Code § 55.56(c). More pointedly, the Civil Code also states that a person can recover the penalty if he has NOT suffered difficulty, discomfort or embarrassment but was merely dissuaded from even attempting to use the non-conforming facility so long as the violations were of the type that *would have* caused those sorts of difficulty. Cal. Civ. Code § 55.56(d), (d)(1), (d)(2); see also *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1076 (N.D. Cal. 2014) (identifying the section 55.56 language as standing language).

In sum, demonstrating that the violation complained of resulted in difficulty or discomfort (or would have) is only necessary to establish that the person is not suing on behalf of others but that the violation denied *the plaintiff* equal access. As one Court recently put it: "To recover statutory damages, plaintiffs must show that they were denied 'equal access;' proof of actual damages is not required." *Moore v. Dollar Tree Stores Inc.*, --- F.Supp.3d ---, 2015 WL 65661, at *4 (E.D. Cal. Jan. 5, 2015).

In this case, the defense misconstrues the plaintiff's deposition testimony and reaches the unsubstantiated conclusion that the plaintiff could have used the higher transaction counter without difficulty, discomfort or embarrassment. The defense argues that, "Plaintiff testified that he could . . . reach a height of 48 inches above the floor with difficulty or discomfort." Defense Brief, p. 3, lines 2-3. This is nonsense. The plaintiff testified about his ripped rotator cuffs and degenerating

1  lumbar spine. Exhibit 2 (Salinas Depo), p. 19, lines 7-15. The plaintiff
2  testified that it is very painful to lift his shoulders higher than his heart. *Id.*
3  at p. 19, line 25 – p. 20, line 2. He also testified that because of chronic
4  pain, he tries not to push himself to his limits in this area. *Id.* at p. 20, lines
5  2-7. He testified that he did not even try to handle the transaction
6  because he could barely see the female employee's head behind the
7  counter and handling the transaction in that fashion was embarrassing.
8  *Id.* at p. 22, lines 13-17. He testified that he suffered actual
9  embarrassment (*id.*) and believed that the height of the counter would
10 cause him pain and difficulty. *Id.* at p. 23, lines 2-13. The defense does
11 not bother to inform the Court of any of this testimony.

12  Because the plaintiff testified that raising his arms above heart-
13 level caused pain, defense counsel wanted to conduct a demonstration
14 about how high the plaintiff can reach. He first discovers that the height of
15 the plaintiff's heart – sitting in the wheelchair – is approximately 37-39
16 inches. *Id.* at p. 99, lines 5-10; p. 100, lines 4-5. The plaintiff raises his
17 arm and announces "this is where I start to feel [pain]." *Id.* at p. 100, line
18 12. Defense counsel observes, "Okay, the video captured that. It looked
19 like it went almost to 48 inches." *Id.* at p. 100, lines 13-14. Plaintiff's
20 counsel pointed out that only the tip of plaintiff's finger reached the
21 almost-48-inch mark and defense counsel agreed. *Id.* at p. 100, lines 14-
22 17. In other words, the plaintiff can barely get his finger tip to 48 inches
23 and, even then, he is already in pain. The defense argument that the
24 plaintiff can use a 46 inch counter with no difficulty is ridiculous.

25  More importantly, a pain index is not the measure by which
26 standing is determined. The plaintiff testified about embarrassment and
27 discomfort resulting from the unlawful height of the transaction counter.
28 This is actionable. See Cal. Civ. Code 55.56(c).

## IV. THE PLAINTIFF'S DECLARATION IS NOT DEFICIENT

Plaintiff's counsel represents scores of quadriplegic clients who are so physically disabled they cannot even hold a pen. This is how he learned of companies like DocuSign which use modern technology for both access and convenience. And there is nothing objectionable about them. Under the Civil Code, a "signature may not be denied legal effect or enforceability solely because it is in electronic form" and this applies to legal documents: "an electronic signature satisfies the law." Cal. Civ. Code §§ 1633.7(a), (b), (d).

The governing law is California's Uniform Electronic Transactions Act (Cal. Civ. Code §§ 1633.1 – 1633.17). Here is a summary of the relevant code sections: (a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form; (c) If a law requires a record to be in writing, an electronic record satisfies the law; and (d) If a law requires a signature, an electronic signature satisfies the law. Cal. Civ. Code § 1633.7. Moreover, even documents that must be signed under penalty of perjury can be signed electronically. Cal. Civ. Code § 1633.11. Plaintiff's counsel has had his clients use DocuSign for years and no federal judge has ever had a problem with it. There is no authority that a person must use a quill shaped pen rather than a computer to affix a signature or adhere the ink to the paper to have been deemed to have "signed" a document.

Defense counsel has raised these exact claim before in almost identical circumstances. It seems to be a standard approach by defense counsel. He has been soundly rebuffed. For example, in the face of a summary judgment filed by plaintiff's counsel in the case of *Langer v.*

*McHale*, Case No. 3:13-cv-02721-CAB-NLS (S.D. Cal. 2014), the defense raised the same arguments and the Court rejected them, ruling:

> Plaintiff is not required to show that he was completely denied access in order to establish an ADA (and therefore Unruh Act) violation. *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041, fn. 4 (9th Cir. 2008); *Wilson v. Haria & Gogri Corp.*, 479 F.Supp.2d 1127, 1134 (E.D. Cal. 2007); *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000). *See also* Cal. Civil Code § 55.56(1). And there is no requirement that Plaintiff mitigate damages when he is merely seeking statutory damages. Cal. Civil Code §52(a). Finally, Defendants' arguments that Plaintiff's electronic signature on the declaration is somehow suspect, or that Plaintiff could not have attended a particularly street fair prior to visiting the subject property, are without merit, immaterial, and do not warrant further discovery. Therefore, Defendants' request to continue the motion is **DENIED**.

*See McHale* Ruling (previously filed as ECF Entry 56-8)), p. 7, lines 15-25.

### V. CONCLUSION

The Plaintiff respectfully requests this Court grant his motion. This is a singular issue case, seeking very modest recovery. There is no basis for this case continuing past this motion.

Dated: July 20, 2015        CENTER FOR DISABILITY ACCESS
                            /s/ Mark Potter
                            By:_____
                            Mark Potter, Esq.
                            Attorneys for Plaintiff